**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CASSANDRA K. CLEMMER,<br><br>Plaintiff,<br>v.<br><br>STATE OF KANSAS, KANSAS DEPARTMENT OF CORRECTIONS,<br><br>Defendant. | ) | Case No. 6:26-cv-01253 |

**COMPLAINT**

COMES NOW Plaintiff Cassandra K. Clemmer, by and through her attorney of record, Scott M. Ufford of McDonald Tinker PA, and for her complaint against Defendant alleges and states as follows:

**<u>JURISDICTION AND VENUE</u>**

1. This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This case contains federal claims against defendant arising under Title VII of the Civil Rights Act of 1964 ("Title VII").
2. This case also contains claims against Defendant arising under Kansas common law for which this Court has supplemental jurisdiction pursuant to 42 U.S.C. § 1367.
3. The amount in controversy exceeds $75,000.00, exclusive of costs and interest.
4. The Court has jurisdiction to hear these claims.

5. Plaintiff has fully exhausted her administrative remedies with respect to her Title VII claims against Defendant. On May 27, 2026, the EEOC issued a "right to sue" letter to Plaintiff with respect to her claims, and this action has been filed within 90 days of Plaintiffs' receipt of that letter.

**THE PARTIES**

6. Plaintiff Cassandra K. Clemmer ("Ms. Clemmer") is an individual residing in Saline County, Kansas.
7. Defendant State of Kansas, Kansas Department of Corrections ("KDOC"), is an employer covered by Title VII of the Civil Rights Act of 1964.

**FACTS RELEVANT TO PLAINTIFF'S CLAIMS**

8. Ms. Clemmer began working for KDOC on or around October 3, 2016.
9. Ms. Clemmer was initially hired to work in the role of Corrections Officer I at the Ellsworth Correctional Facility in Ellsworth, Kansas. Around fall of 2023, she was promoted into the Enforcement, Apprehension, and Investigation (EAI) department at the Hutchinson Correctional Facility in Hutchinson, Kansas.
10. By summer of 2024, the Special Agent Supervisor, Abriam Lakzadeh, exhibited discriminatory behavior against Ms. Clemmer and other female employees, including aggressive, vulgar, and derogatory language not used against male employees, yelling at Ms. Clemmer and other female employees, closely micromanaging Ms. Clemmer's and other female

employees' work more so than male employees, and limiting Ms. Clemmer's and other female employee's freedom to perform their essential job duties.

11. Specifically, on at least one occasion in or around October 2024, Mr. Lakzadeh used security cameras to watch Ms. Clemmer and other female employees and track their movements around the facility. Based on information and belief, this was not the only occasion in which such surveillance against female employees, including Ms. Clemmer, transpired.

12. Mr. Lakzadeh did not use security cameras to observe male employees or track their movements around the facility.

13. At one point, in front of Ms. Clemmer and other employees, including other female employees, Mr. Lakzadeh referred to another female employee as being a "clit commander."

14. In or around January of 2025, Mr. Lakzadeh told Ms. Clemmer and other female employees, including Elizabeth Aragon and Jennifer Autry, that they were "rape-able."

15. Mr. Lakzadeh referred to Ms. Clemmer and another female employee, Jennifer Autry, as "scissor sisters," a derogatory and homophobic term.

16. In or around January of 2025, Mr. Lakzadeh instructed Ms. Clemmer and other female employees that they were no longer able to walk through the Hutchinson Correctional Facility without an escort, despite no issues requiring this limitation on female employees' freedom of movement throughout the facility.

17. Mr. Lakzadeh regularly excluded Ms. Clemmer and other female employees from administrative meetings while including male employees.

18. Ms. Clemmer and other female employees were regularly singled out and yelled at during morning meetings.

19. In or around January of 2025, Mr. Lakzadeh reprimanded Ms. Clemmer and other female employees for being "too loud," despite there being no difference in behavior from that of their male counterparts who were not reprimanded.

20. Mr. Lakzadeh regularly singled out the personal lives of Ms. Clemmer and other female employees, using past relationships and trauma to insult them and elicit emotional responses, which he did not do with male employees.

21. Prior to January 2025, Ms. Clemmer had never previously been denied the ability to perform essential job duties, nor were male employees instructed that they could not perform their job duties without an escort and were free to roam about the facility unattended.

22. The harassment and discriminatory behavior by Mr. Lakzadeh against Ms. Clemmer continued on a regular basis through mid-March of 2025, when Ms. Clemmer applied for and was awarded the title Unit Team Supervisor, which included a transfer, in part so that she could limit her interactions with Mr. Lakzadeh.

23. On or around March 17, 2025, Ms. Clemmer and two other female employees, Jennifer Autry and Elizabeth Aragon, who also experienced

discrimination at the hands of Mr. Lakzadeh filed an EEO Complaint with Human Resources Director, Tina Broomfield.

24. Prior to filing the complaint with Ms. Broomfield, other male employees and Hutchinson Correctional Facility leadership were aware of Mr. Lakzadeh's conduct and failed to report or take any action, effectively condoning and supporting his behavior.

25. On March 18, 2025, Jeff Pettijohn spoke with Don McKenna, two of the male employees in the EAI department with Ms. Clemmer, and stated, "All the girls had to do was talk to Abe if there was a problem, but now they went behind his fucking back."

26. Despite being aware of his conduct for months, no action was taken by KDOC until Mr. Lakzadeh was placed on administrative leave in March of 2025 for an investigation to be conducted.

27. KDOC failed to follow through with any further corrective action against Mr. Lakzadeh following his placement on administrative leave.

28. Following his administrative leave, Mr. Lakzadeh was allowed to remain in charge of the same women against whom he had harassed and discriminated against.

29. By failing to take prompt and sufficient action against Mr. Lakzadeh, Defendant tolerated improper treatment of Ms. Clemmer while treating similarly-situated male employees more favorably.

30. After KDOC failed to take sufficient action against Mr. Lakzadeh, Ms. Clemmer and two other employees, Ms. Autry and Ms. Aragon, filed complaints with the Kansas Human Rights Commission.

31. Ms. Clemmer's original KHRC complaint was filed on June 13, 2025.

32. On or around July 16, 2025, just one month after filing her KHRC complaint, Ms. Clemmer appeared for the first of two interviews by Deputy Warden Nick Ball and Deputy Warden Tyler Clark, for an investigation purportedly related to contraband at the Hutchinson Correctional Facility.

33. The interview by Mr. Ball and Mr. Clark focused exclusively on Ms. Clemmer and Elizabeth Aragon, one of the other two women who filed internal complaints against Mr. Lakzadeh and who also filed a complaint with the KHRC.

34. On August 15, 2025, Ms. Clemmer received a notice of intent to terminate her employment on the grounds of undue familiarity with inmates, introducing contraband, and failure to report acts of unprofessional conduct, undue familiarity, and introduction of contraband by Ms. Aragon.

35. Ms. Clemmer never introduced any contraband into the facility.

36. Ms. Clemmer never acted with undue familiarity with any inmate at the facility.

37. Ms. Clemmer was not aware of any actions by Ms. Aragon that rose to the level of undue familiarity with any inmates.

38. Ms. Clemmer was not aware of any actions by Ms. Aragon to introduce contraband into the facility.

39. In fact, among the contraband Ms. Clemmer was accused of bringing into the facility was a pair of shoes for an inmate that had been explicitly approved by Deputy Warden Misti Kroeker.

40. To the extent that any issues arose that caused Ms. Clemmer concern, observations and conduct were reported to Mr. Lakzadeh or other acting supervisors.

41. Based on information and belief, despite the confidentiality of the investigation involving Ms. Clemmer and Ms. Aragon, other male KDOC employees, including Christopher Dean, who at the time was working at the El Dorado Correctional Facility with Tyler Clark, were improperly informed about and discussed the details of the investigation and received no discipline.

42. Prior to the notice of intent to terminate, Ms. Clemmer had never received any discipline or corrective action regarding any of the allegations contained in the notice of intent to terminate her position.

43. On August 19, 2025, Ms. Clemmer provided a letter in response to the notice of intent to terminate, contesting the grounds for termination.

44. On August 22, 2025, just two months after filing her complaint with the KHRC, Ms. Clemmer was terminated from her position with KDOC based

on the same false, pretextual accusations provided in the notice of intent to terminate.

45. Upon information and belief, other similarly situated male employees who have been cited with the same or similar infractions have received discipline short of termination.

46. Ms. Clemmer was targeted for filing complaints against Mr. Lakzadeh and the KDOC.

47. Ms. Clemmer filed a subsequent complaint for retaliation with the KHRC on or around September 19, 2025.

## COUNT 1: TITLE VII HOSTILE WORK ENVIRONMENT

48. Plaintiff incorporates by reference all other allegations contained in the paragraphs above.

49. Ms. Clemmer is a woman.

50. Ms. Clemmer sustained continued, pervasive and severe harassment when she was supervised by Mr. Lakzadeh in the following nonexclusive ways:

    a. By being yelled, belittled and demeaned, which did not happen with similarly situated male employees;

    b. By being limited in her work duties, including her freedom to move throughout the facility on her own accord as necessary to perform essential job functions, which did not happen with similarly situated male employees;

c. By overhearing her supervisor refer to another female employee as a "clit commander";

d. By being told that she was "rape-able";

e. By being observed and tracked throughout the facility through the use of surveillance cameras.

51. This harassment continued for months despite the behavior being known by Mr. Lakzadeh's administrative leadership, including Human Resources Director Tina Broomfield and Warden Dan Schnurr who observed his behavior at morning administrative meetings.

52. The harassment altered the terms, conditions and privileges of employment for Ms. Clemmer.

53. The harassment clearly stemmed from gender-based animus as the comments and restrictions were based on Ms. Clemmer's status as a woman.

54. The State and KDOC collectively created and maintained a hostile work environment by allowing a hostile and discriminatory supervisor to degrade and humiliate Ms. Clemmer.

55. As a direct and proximate result of this violation of Title VII, Ms. Clemmer suffered damages due to Defendant's failure to create and maintain a workplace free of discrimination, where gender is not a barrier to opportunity.

## COUNT 2: TITLE VII DISPARATE TREATMENT DISCRIMINATION

56. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

57. Ms. Clemmer satisfactorily performed her duties for Defendant for years with minimal concerns.

58. In fact, Ms. Clemmer received multiple accolades during her time working for these Defendant.

59. However, by January 2025, Ms. Clemmer's job duties began being restricted based upon the conditions and micromanagement against her and other female employees by Mr. Lakzadeh, including his observation of her and other female employees through the use of the facility's surveillance cameras. Male employees were not subject to the same or similar conditions.

60. Ms. Clemmer was ultimately terminated in August 2025 for unsubstantiated conduct and policy violations which had no factual support. Similarly situated male employees were not subject to false, sham investigations into false violations, losing their livelihood in the process.

61. As a direct and proximate result of these disparate treatment violations of Title VII, Ms. Clemmer suffered damages due to the illegal discrimination against her by the State of Kansas and KDOC.

## COUNT 3: TITLE VII RETALIATION

62. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

63. Ms. Clemmer reported hostile harassment of Mr. Lakzadeh to HR Director, Tina Broomfield on March 17, 2025.

64. Ms. Clemmer filed her initial complaint with the KHRC on June 13, 2025.

65. Less than a month after filing her complaint with the KHRC, Ms. Clemmer was subjected to an investigation based upon false allegations and policy violations.

66. Ms. Clemmer was further retaliated against by KDOC following her internal complaint against Mr. Lakzadeh and after filing her complaint with the Kansas Human Rights Commission, specifically based on increased scrutiny of her work, conducting an unfounded investigation against her and one other reporting female employee, and ultimately terminating her employment based upon false accusations used as pretextual justification for her termination.

67. As a direct and proximate result of these violations of Title VII, Ms. Clemmer suffered damages due to these Defendant's retaliation against her.

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant; that the Court award Plaintiff all damages to which she is entitled, including but not limited to, lost wages, statutory penalties, compensatory

damages, and damages for emotional distress and mental anguish; that the Court award her reasonable attorney fees and the costs of this action; and that the Court allow such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

/s/ Scott. M. Ufford
Scott M. Ufford, #27524
McDonald Tinker PA
300 W. Douglas, Ste. 500
Wichita, Kansas 67202
P: 316-263-5851
F: 316-263-4677
E: sufford@mcdonaldtinker.com
*Attorney for Plaintiff*

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues.

/s/ Scott. M. Ufford
Scott M. Ufford

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates Wichita, Kansas, as the place of trial in this case.

/s/ Scott. M. Ufford
Scott M. Ufford